IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
|   HASSAN BUTLER, | ) | |
| | ) | |
|              Petitioner, | ) | |
| | ) | |
|              v. | ) | No. 08 C 3171 |
| | ) | |
| J.R. WALLS, Warden, | ) | |
|   Western Illinois Correctional Center, | ) | The Honorable |
| | ) | John W. Darrah, |
|           Respondent. | ) | Judge Presiding. |

---

### ANSWER

      Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's Orders dated June 5, 2008 (Doc. 5) and June 23, 2008 (Doc. 12), respondent J.R. WALLS answers the petition for writ of habeas corpus filed in the above-captioned cause as follows:

      1.     Petitioner Hassan Butler is incarcerated at the Western Illinois Correctional Center in Mount Sterling, Illinois, and is identified as prisoner number K80816.  J.R. Walls, the warden of that facility, has custody of petitioner.

      2.     Petitioner originally pled guilty to attempted armed robbery, armed robbery, and attempted murder of a police office, and was sentenced to two concurrent 10-year prison sentences to run consecutively to a 35-year prison sentence.  Report of Proceedings Vol. I, *People v. Butler*, No. 98-CR-373 (Cook Cty.

Cir. Ct.) (Exh. M) at 120-22, 125-26.  Petitioner moved to vacate his guilty plea, and

the court granted the motion.  Exh. M at 141-45.

3.     Following a bench trial in the Circuit Court of Cook County, Illinois,

petitioner was convicted of attempted first degree murder of a peace officer and

attempted robbery. Report of Proceedings Vol. III, *People v. Butler*, No. 98-CR-371

(Cook Cty. Cir. Ct.) (Exh. O) at 387-403; Common Law Record, *People v. Butler*, 98-

CR-373 (Cook Cty. Cir. Ct.) (Exh. V) at 60.  He was sentenced to consecutive terms

of 45 years and 10 years, respectively.  Exh. O at 492; Exh. V at 60.

4.     Petitioner appealed, arguing that the State had failed to prove beyond

a reasonable doubt that he knew or should have known that the victim was an off-

duty police officer.  Pet. Br., *People v. Butler*, No. 1-03-1294 (Ill.App.) (Exh. B) at 3,

7.  On June 4, 2004, the state appellate court affirmed the judgment of the circuit

court.  Order, *People v. Butler*, No. 1-03-1294 (Ill.App. 2004) (Exh. A) at 9.

5.     Petitioner filed a petition for leave to appeal (PLA) that the Illinois

Supreme Court denied on October 6, 2004.  Order denying PLA, *People v. Butler*,

No. 98688 (Ill. 2004) (Exh. E); PLA, *People v. Butler*, No. 98688 (Ill.) (Exh. F).

6.     Petitioner mailed his postconviction petition (PC) on March 24, 2005;

the Cook County Circuit Court filed it on April 4, 2005.  Petition for Postconviction

Relief, *People v. Butler*, No. 98-CR-373 (Cook Cty. Cir. Ct.) (Exh. G) at 1.

Petitioner's PC raised three claims:

(a)     trial counsel was ineffective for threatening to withdraw if petitioner
        testified; for failing to sufficiently cross-examine the State's witnesses;

for failing to call petitioner's codefendant as a witness; for failing to object to the State's calling certain witnesses during sentencing; and for failing to object to the court's consideration of juvenile charges as an aggravating factor;

(b)    appellate counsel was ineffective for failing to raise the claims of trial counsel's ineffectiveness;

(c)    petitioner was denied a fair trial because the judge was biased and penalized petitioner for withdrawing his plea by adding ten years to the sentence.

Exh. G at 3-11.  The court summarily denied the petition.  Order denying Petition for Postconviction Relief, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.) (Exh. H).

7.    Petitioner appealed and the court appointed the Office of the State Appellate Defender (OSAD) as counsel on appeal.  OSAD filed a motion for leave to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  *See* Motion to Withdraw, *People v. Butler*, No. 1-06-0159 (Exh. J).

8.    On March 23, 2007, the state appellate court affirmed the judgment of the circuit court and allowed OSAD's motion for leave to withdraw.  Order, *People v. Butler,* No. 1-06-0159 (Ill.App. 2007) (Exh. I) at 2.

9.    Petitioner filed a PLA, raising four claims:

(a)    trial counsel was ineffective for failing to admonish petitioner of his right to testify and not objecting to the trial court's vindictiveness in adding ten years to petitioner's sentence for withdrawing a guilty plea;

(b)    appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel;

(c)    petitioner was denied his due process rights when the trial court (i) dismissed his PC, (ii) added ten years to his sentence for withdrawing his guilty plea, and (iii) failed to admonish petitioner regarding mandatory supervised release; and

3

(d)    postconviction counsel violated Illinois Supreme Court Rule 651(c) by
failing to provide adequate assistance.

PLA, *People v. Butler*, No. 105301 (Ill.) (Exh. L) at 5-7.  The Illinois Supreme Court

denied the PLA on November 29, 2007.  Order denying PLA, *People v. Butler*, No.

105301 (Ill. 2007) (Exh. K).

10.    On May 27, 2008, petitioner filed the instant petition for writ of

habeas corpus, raising five claims:

(a)    there was insufficient evidence that the victim was a police officer;

(b)    trial counsel was ineffective for failing to admonish petitioner of his
right to testify and for failing to object to the trial court's vindictive
sentencing;

(c)    appellate counsel was ineffective for failing to raise claims regarding
trial counsel's ineffectiveness and judicial misconduct;

(d)    the trial judge denied petitioner a fair trial by denying his right to
testify at the hearing regarding the pro se motion for a new trial; and

(e)    postconviction counsel failed to competently examine petitioner's pro se
petition.

Pet. at 5-6.

11.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases,

respondent is filing the following state court materials as exhibits under separate

cover:

Exhibit A:    Order, *People v. Butler*, No. 1-03-1294 (Ill.App. 2004);

Exhibit B:    Pet. Br., *People v. Butler*, No. 1-03-1294 (Ill.App.);

Exhibit C:    State Br., *People v. Butler*, No. 1-03-1294 (Ill.App.);

Exhibit D:    Pet. Reply Br., *People v. Butler*, No. 1-03-1294 (Ill.App.);

4

Exhibit E:    Order denying PLA, *People v. Butler*, No. 98688 (Ill. 2004);

Exhibit F:    PLA, *People v. Butler*, No. 98688 (Ill.);

Exhibit G:    Petition for Postconviction Relief, *People v. Butler*, 98-CR-373
              (Cook Cty. Cir. Ct.);

Exhibit H:    Order denying Petition for Postconviction Relief, *People v.
              Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit I:    Order, *People v. Butler,* No. 1-06-0159 (Ill.App. 2007);

Exhibit J:    Motion to Withdraw, *People v. Butler*, No. 1-06-0159;

Exhibit K:    Order denying PLA, *People v. Butler*, No. 105301 (Ill. 2007);

Exhibit L:    PLA, *People v. Butler*, No. 105301 (Ill.);

Exhibit M:    Report of Proceedings Vol. I, *People v. Butler*, No. 98-CR-371
              (Cook Cty. Cir. Ct.);

Exhibit N:    Report of Proceedings Vol. II, *People v. Butler*, No. 98-CR-371
              (Cook Cty. Cir. Ct.);

Exhibit O:    Report of Proceedings Vol. III, *People v. Butler*, No. 98-CR-371
              (Cook Cty. Cir. Ct.);

Exhibit P:    Supplemental Report of Proceedings Vol. I, *People v. Butler*, No.
              98-CR-371 (Cook Cty. Cir. Ct.);

Exhibit Q:    Supplemental Report of Proceedings Vol. II, *People v. Butler*, No.
              98-CR-371 (Cook Cty. Cir. Ct.);

Exhibit R:    Supplemental Report of Proceedings Vol. III, *People v. Butler*,
              No. 98-CR-371 (Cook Cty. Cir. Ct.);

Exhibit S:    Report of Proceedings (PC), *People v. Butler*, No. 98-CR-371
              (Cook Cty. Cir. Ct.);

Exhibit T:    Supplemental Report of Proceedings (PC) Vol. I, *People v. Butler*,
              No. 98-CR-371 (Cook Cty. Cir. Ct.);

Exhibit U:     Supplemental Report of Proceedings (PC) Vol. II, *People v. Butler*, No. 98-CR-371 (Cook Cty. Cir. Ct.);

Exhibit V:     Common Law Record, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit W:     Supplemental Common Law Record, Vol. I, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit X:     Supplemental Common Law Record, Vol. II, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit Y:     Supplemental Common Law Record, Vol. III, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit Z:     Common Law Record (PC), *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.);

Exhibit AA:  Supplemental Common Law Record (PC), Vol. I, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.); and

Exhibit BB:  Supplemental Common Law Record (PC), Vol. II, *People v. Butler*, 98-CR-373 (Cook Cty. Cir. Ct.).

## STATEMENT OF FACTS

The state appellate court set forth the following factual summary of the evidence presented at petitioner's trial, which is "presume[d] to be true." *Whitman v. Bartow*, 434 F.3d 968, 969 (7th Cir. 2006); *see also* 28 U.S.C. § 2254(e)(1):

> [Petitioner] and Calvin Brown were charged with attempted first degree murder of a peace officer, attempted first degree murder, aggravated battery with a firearm, aggravated battery to a police officer, attempted armed robbery, and aggravated battery following an early morning encounter with Chicago Police Officer Willie Newton outside of his home at 10052 South Vernon in Chicago. [Petitioner] initially entered into a negotiated guilty plea, but the court later granted [petitioner's] motion to withdraw that plea and a bench trial was held.

6

At that trial, Officer Newton testified that he is a patrol officer with the Chicago Police Department and also a licensed, practicing attorney. Upon arriving home during the early morning hours on November 26, 1997, he parked his car on the street in front of his house. Although he was not on duty, Officer Newton had his police star and identification inside his wallet and his .38 caliber Smith & Wesson service revolver in his jacket. Officer Newton explained that as a Chicago police officer, he is authorized to carry his weapon 24 hours a day, regardless of whether he is technically on duty. He further explained that even when he is off duty, he still has full power to act as a police officer.

Before Officer Newton got out of his car, [petitioner] emerged from the bushes near his neighbor's house carrying a blue steel automatic weapon. [Petitioner] was wearing dark clothing, what appeared to be a black leather jacket, and a black knit hat. Officer Newton attempted to exit the car, but [petitioner] got to the door first, opened it, put the gun to Officer Newton's head, and told him "[g]ive me your mother fucking money." Officer Newton replied "okay, just let me out of the car," and [petitioner] permitted him to do so, keeping the gun pointed at Officer Newton as he did.

[Petitioner] began going through Officer Newton's pockets. Meanwhile, an older model maroon or red four-door car with its headlights off drove down the street and stopped next to Officer Newton's car, pinning Officer Newton and [petitioner] between the two vehicles. The driver of the maroon car said nothing, and [petitioner] searched Officer Newton's pants pockets, one of which contained about $50 in loose bills. Officer Newton reached into his jacket to get his gun, and [petitioner] immediately told him to "show me your hands."

Officer Newton drew the gun and stated, "police." On cross-examination, Officer Newton explained that he announced his office using the same tone of voice he was testifying in. The two men were now roughly three feet apart, each pointing a gun at the other. [Petitioner] fired at Officer Newton, and Officer Newton returned fire. Officer Newton was struck twice in the chest and once in the left forearm. He was "pretty sure" that [petitioner] was also struck.

Officer Newton then took cover behind his car and collected himself for about five seconds. When he looked up, [petitioner] and the maroon car were gone. As Officer Newton walked to his house, his neighbor, Warren Berry, came out and asked him if he had heard gunshots. Officer Newton told Berry that he had been shot. Berry testified that he then heard a car door slam and saw what he described as a burgundy four-door General Motors vehicle parked

7

near Officer Newton's car suddenly speed away with its lights off. Berry
brought Officer Newton, whose chest was bleeding, to his porch and called
911. An ambulance transported Officer Newton to Christ Hospital, where he
underwent surgery and received treatment for his injuries for the next four
days.

Following his arrest, [petitioner] spoke with Detective Michael McDermott at
the police station. [Petitioner] told McDermott that Calvin Brown picked him
up in a stolen car and they drove to 100th and Vernon looking for someone to
rob. Brown gave [petitioner] a loaded .40 caliber semi-automatic handgun,
and they saw a man near his car. [Petitioner] took the gun, ran up to the
man and said, "this is a robbery." The man then pulled out a gun and they
fired at each other. [Petitioner] was shot and fell to the ground. Calvin
Brown pulled him into the maroon four-door car and drove him to Jackson
Park Hospital. Brown dropped him off about a block away, which upset
[petitioner]. [Petitioner] stated that he dropped his black knit cap while
walking to the hospital. Police forensic investigator Carl Brasic testified that
he recovered three .40 caliber shell casings from the street in front of Officer
Newton's home and a black knit hat from an alley near Jackson Park
Hospital.

Detective McDermott presented Officer Newton with a photo array after he
was released from surgery and he selected [petitioner] as his assailant, but
stated that he would like to view him in person to be sure. After this
identification, guards were placed at [petitioner's] hospital bed.

Assistant State's Attorney (ASA) Jim Navarre testified that he spoke with
defendant at the police station on November 27, 1997. [Petitioner] initially
denied any involvement in Officer Newton's shooting, but after police
confronted him with the facts obtained in the investigation, [petitioner] made
a statement. ASA Navarre ultimately reduced [petitioner's] statement to
writing.[] On cross-examination, Navarre stated that he asked [petitioner] if
he knew Officer Newton was a police officer, but [petitioner] stated that he
did not know one way or another, so Navarre did not include anything about
it in the statement.

The court ultimately found [petitioner] guilty on all counts, observing that
certain counts merged into others. In announcing its decision, the court
indicated that it found the State's witnesses credible and noted that Officer
Newton informed [petitioner] that he was a police officer by stating "police"
as he drew his gun. The court also found portions of [petitioner's] statement
untruthful. Thus, the court concluded, [petitioner] knew or should have
known that Officer Newton was a peace officer engaged in his official duties

8

because he was authorized, as a Chicago Police Officer, to make arrests whenever he saw a crime, whether he was technically on duty or not.

Exh. A at 1-6.

## ARGUMENT

### I.    AEDPA Requires A Deferential Standard Of Review.

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that a habeas petition shall not be granted unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  For purposes of Section 2254(d)(1), clearly established Federal law, as determined by the Supreme Court of the United States, "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary to" clearly established federal law within the meaning of section 2254(d)(1) if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *id.* at 405, or "decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the

court did not cite [Supreme Court] opinions"; indeed, "a state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2002)).

A state court decision involves "an unreasonable application" of federal law within the meaning of section 2254(d)(1) when the "state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 410.  Put another way, where "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)).  "The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case." *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (internal quotations omitted).

With respect to Section 2254(d)(2), AEDPA requires this Court to respect the state appellate court's factual determinations: "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). The Supreme Court emphasized that the "panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus." *Rice v. Collins*, 546 U.S. 333, 342 (2006). To prevail, petitioner must offer clear and convincing evidence that the state appellate court's factual determination was wrong. *See* 28 U.S.C. § 2254(e)(1); *Montgomery v. Uchtman*, 426 F.3d 905, 912 (7th Cir. 2005).

## II.    Sufficient Evidence Established That Petitioner Knew The Individual He Attempted To Murder Was A Police Officer.

The state appellate court reasonably concluded finding that there was sufficient evidence that petitioner knew the victim was a police officer. *See* Exh. A at 8-9. This knowledge raised the maximum sentence petitioner faced from sixty to eighty years, although he did not receive the maximum sentence. *See* 720 ILCS 5/8-4(a), (c); 720 ILCS 5/9-1(b)(1); 730 ILCS 5/5-8-1(a)(1). The state appellate court cited the correct rule regarding the sufficiency of evidence, and its decision to credit the uncontradicted testimony of the police officer that he announced that he was a police officer before petitioner shot him was reasonable and is not subject to reassessment in these collateral proceedings.

11

It is well-established that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  The state appellate court cited the correct rule: "The standard of review when determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Exh. A at 6; *see also Adams v. Bertrand*, 453 F.3d 428, 432 (7th Cir. 2006) (finding that substantively identical formulation "effectively duplicates the Supreme Court standard for sufficiency challenges").  Specifically, as the appellate court stated, "the State was required to prove beyond a reasonable doubt that the individual he attempted to murder was a peace officer."  Exh. A at 7.

The state appellate court reasonably applied the *Jackson* rule in finding that the State met that burden: "the trial court found Officer Newton's uncontradicted testimony that he announced his office as he drew his gun credible, and we will not disturb that credibility determination."  Exh. A at 8.  "Thus, there was a sufficient basis for the trial court to conclude that [petitioner] knew or should have known that Officer Newton was a police officer when he shot him."  Exh. A at 8-9.  As did the appellate court, this Court should decline to disturb the state court's credibility determination.  *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by

12

them."). The state appellate court applied the correct rule of law in a reasonable fashion, and petitioner's claim that there was insufficient evidence to find that he knew his victim was a police officer should be denied.

## III.    The Ineffective Assistance Of Counsel Claims Should Be Denied.

To succeed on an ineffective assistance claim, petitioner must prove both that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Regarding the first prong, the "review of the attorney's performance is 'highly deferential' and 'reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). There also exists a "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Daniels*, 476 F.3d at 434 (quoting *Strickland*, 466 U.S. at 689).

"For the second element, defendant must show that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Daniels*, 476 F.3d at 434 (quoting *Strickland*, 466 U.S. at 687). In the context of a federal habeas petition governed by AEDPA, the petitioner must do more than merely convince the federal court that the state court applied *Strickland* incorrectly; the petitioner must demonstrate that the state court "applied *Strickland* in an

objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Petitioner fails on both elements in each of his arguments.

### A. Petitioner Has Failed To Establish That Trial Counsel Was Deficient Or That He Was Prejudiced By Counsel's Performance.

#### 1. The argument regarding counsel's failure to admonish petitioner of his right to testify should be rejected.

Petitioner claims that trial counsel was ineffective for failing to admonish petitioner about his right to testify. Pet. at 6. But the state courts found as a factual matter that counsel had advised petitioner about his right to testify in an appropriate manner. Exh. O at 425-26. That factual determination was reasonable and must be respected. *See Schriro*, 127 S.Ct. at 1939; 28 U.S.C. § 2254(d)(2); *see also Marshall*, 459 U.S. at 434; 28 U.S.C. § 2254(e)(1).

Trial counsel testified he discussed with petitioner his right to testify, and advised him not to testify, but that he never threatened to withdraw if petitioner testified. Exh. O at 423-25. Petitioner has stated both that trial counsel told him he would be "on his own" if he testified and that counsel did not inform him of his right to testify. Pet. Exh. A at 2. In assessing this argument, the state court found trial counsel's testimony more credible. Exh. O at 425-26. It was not unreasonable for the state court to credit the testimony of a "seasoned" public defender over the ever-changing testimony of petitioner. *See* Exh. O at 426. Because this Court must accept the state court's credibility determination, crediting counsel's testimony that he appropriately advised petitioner regarding his right to testify, absent clear and

convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1), there can be no finding of deficient performance — and therefore also no finding of prejudice.  This ground of ineffective assistance should be denied.

> **2.    The argument regarding counsel's failure to object to the trial court's "vindictiveness" should be rejected.**

Petitioner claims that the trial judge impermissibly increased his sentence by ten years after he withdrew his guilty plea and that counsel was ineffective for failing to object.  Pet. at 6.  The claim fails on both the law and facts of the case.

As a matter of law, petitioner had no right to receive the same sentence after trial he received following his guilty plea; a trial court may impose a greater sentence in appropriate circumstances.  Multiple Supreme Court cases "unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based."  *Corbitt v. New Jersey*, 439 U.S. 212, 224 (1978).  The burden is on petitioner to "prove actual vindictiveness" on the part of the trial judge.  *Alabama v. Smith*, 490 U.S. 794, 799 (1989).

Sentencing petitioner to different terms depending on his plea does not "indicate that he was being punished for exercising a constitutional right."  *Corbitt*, 439 U.S. at 223.  "[W]ithholding the possibility of leniency from" defendants who go to trial "cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed."  *Id.*  The Seventh Circuit has on

multiple occasions approved of "the tradition of offering lenience to defendants in exchange for their entering a guilty plea . . .[,] a tradition that was deemed constitutional by the Supreme Court in *Corbitt*." *United States v. Berry*, 60 F.3d 288, 295 (7th Cir. 1995) (quoting *United States v. Velez*, 46 F.3d 688, 694 (7th Cir. 1995)).

In this case, the trial court explained that new evidence in aggravation had come to light since the time of petitioner's guilty plea and articulated the factors that caused it to increase petitioner's sentence. The court explained that it was increasing the sentence because "some of the aggravation that I heard during the [sentencing] . . . and on the last court date and matters raised in the presentence report . . . are matters that were not brought to my attention during the course of the [guilty plea] conference." Exh. O at 482. Not only did the trial court hear the victim's testimony at trial, it heard testimony from victims in two other robberies in which petitioner was implicated, and was informed that petitioner admitted lying in his pre-trial investigation report about having a drug problem in order to gain sympathy from the court. Exh. O at 489-90.

The trial judge further explained the factors he considered:

> I have considered the – facts as I've heard them both in the underlying case where Mr. Newton testified as well as the incidents that [the two witnesses at the sentencing hearing] have testified to. I've considered the testimony in mitigation of [petitioner's mother.] I considered the information contained in the presentence investigation report attached with [petitioner's] previous criminal history. I considered the statutory factors in aggravation and mitigation contained in the Criminal Code of

> procedure and I've considered the arguments that
> counsels have made in aggravation and mitigation as
> well.

Exh. O at 484-85.  This Court should take the judge at his word.  *See Coulter v. McCann*, 484 F.3d 459, 470 (7th Cir. 2007).

There is no evidence that counsel performed deficiently during sentencing. Counsel aggressively cross-examined the State's witnesses during the sentencing hearing.  Exh. O at 446-50, 465-67.  Counsel also called petitioner's mother in mitigation and made an impassioned plea for a low sentence.  Exh. O at 467-72, 478-81.  There was no reason for counsel to object to any "vindictiveness" based on petitioner's withdrawal of his plea because there was no evidence of vindictiveness: the court articulated legitimate factors for the sentence.  Thus, counsel's performance was not deficient for failing to object to the "vindictiveness."  For these same reasons, petitioner cannot show a reasonable probability his sentence would have been lower; thus, petitioner cannot show prejudice.  The claim of ineffective assistance of trial counsel should be denied.

**B.    Petitioner Has Failed To Establish That The State Court Was Unreasonable In Rejecting The Claim That Appellate Counsel Was Ineffective**.

Claims of ineffective assistance of appellate counsel are subject to the same standard as those attacking trial counsel.  *See Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004) (analyzing performance of appellate counsel under *Strickland* standard); *see also Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) ("We

employ the familiar two-pronged test outlined by the Supreme Court in *Strickland*

. . . to evaluate the effectiveness of both trial and appellate counsel."). Appellate

counsel "is not required to raise every non-frivolous issue on appeal." *Martin*, 384

F.3d at 852. Petitioner has to show that appellate counsel "fail[ed] to argue an

issue that is both obvious and clearly stronger than the issues raised." *Id.* at 851.

   For the reasons stated above, there were no issues of trial counsel's

performance that were either obvious or strong. *See supra* 14-18. Moreover, there

was no evidence of judicial vindictiveness. *See supra* 16-18. Appellate counsel

chose to raise the issue of the sufficiency of the evidence. *See* Exh. B. Petitioner

himself believes that issue to be sufficiently strong that he raises it in the instant

petition. Pet. at 5. Because the claims petitioner argues counsel should have raised

lacked merit and were neither obvious, nor stronger than the one counsel raised,

petitioner cannot overcome the strong presumption that "counsel's conduct falls

within the wide range of reasonable professional assistance." *See Daniels*, 476 F.3d

at 434. The claim of ineffective assistance of appellate counsel should be denied.

## IV.  The Claim Of Ineffective Assistance Of Postconviction Counsel Is Not Cognizable.

   Petitioner's claim that his postconviction counsel did not perform adequately

under Illinois Supreme Court Rule 651(c) is not cognizable and this Court cannot

remedy any alleged failures for two reasons: (1) there is no federal right to counsel

in state postconviction proceedings; and (2) federal courts cannot provide a remedy

for alleged errors of state law.

"There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* Therefore, petitioner cannot receive habeas relief with respect to the performance of counsel in his State postconviction proceedings. Indeed, Section 2254(i) specifically provides that "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

Moreover, the "remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). A "federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Nothing in the Constitution entitles state defendants to obtain a federal benefit from errors of state law." *Lambert v. Davis*, 449 F.3d 774, 779 (7th Cir. 2006).

Here, petitioner claims that "postconviction counsel . . . made no effort to assist the petitioner in submitting an adequate presentation of the contentions in his pro se postconviction petition, and that postconviction counsel's conduct was in conflict with Illinois Supreme Court Rule 651(c)." Pet Exh. B at 6. That is an issue of state law. Petitioner had no right under the Federal constitution to counsel in

19

those proceedings, and claims of errors of state law are not cognizable in habeas proceedings in this Court. *See Coleman*, *supra*; *Lambert*, *supra*. Thus, petitioner's claim regarding the performance of postconvcition counsel should be denied.

## V.    The Claim That Petitioner Was Not Allowed To Testify At A Motion For A New Trial Is Not Cognizable.

Petitioner claims that the trial judge denied him a fair trial by denying him the right to testify at the hearing on his the pro se motion for a new trial. Pet. at 6. But petitioner has no federally protected right to testify at a hearing on a motion for a new trial, so the claim is not cognizable and should be denied.

As discussed above, habeas relief can be granted only if the petitioner has been deprived a right granted by the Constitution, laws, or treaties of the United States. *See Estelle*, 502 U.S. at 68; *Perruquet*, 390 F.3d at 511. No federal right exists to testify at a motion for a new trial. Indeed, this Court can deny a motion for a new trial without hearing any testimony. *See* Fed. R. Civ. P. 59(a)(2) ("After a nonjury trial, the court *may*, on motion for a new trial, open the judgment if one has entered, *take additional testimony* . . .) (emphases added). Because petitioner has no federal right to testify at a motion for a new trial, the claim is not cognizable and should be denied.

Moreover, the claim fails as a factual matter. At the hearing, the trial judge granted petitioner multiple opportunities to speak on his own behalf regarding the claims raised in his pro se motion for a new trial. The State trial court asked petitioner, "do you wish to state what it is that you were saying with regard to your

20

attorney, because you had filed a pro se motion for a new trial . . . .  Do you want to address the issues that you have raised in your motion?"  Exh. O at 418-19. Petitioner responded that he had "addressed them [at] the last court date."  Exh. O at 419.  The court asked again, "do you wish to add anything new with regard to what you stated on the last court date?"  Exh. O at 419.  "No," petitioner responded. After petitioner's counsel responded to questions from the judge regarding the discussions about whether petitioner would testify, the court once again asked petitioner, "is there anything further you wish to say with regards to the issues you have raised in your Motion for a New Trial?"  Exh. O at 423.  "No.  No your Honor," petitioner responded.  Exh. O at 423.

In the end, habeas relief is unavailable because petitioner has no federal right to testify at a motion for a new trial.  Moreover, his claim fails as a factual matter because he was given multiple opportunities to do so.  The claim is not cognizable and is belied by the record, and therefore it should be denied.

## <u>CONCLUSION</u>

This Court should deny the instant petition for writ of habeas corpus.


July 31, 2008                                    Respectfully submitted,

                                                LISA MADIGAN
                                                Attorney General of Illinois

                              By:    s/ Eldad Z. Malamuth
                                                ELDAD Z. MALAMUTH, Bar # 6275421
                                                Assistant Attorney General
                                                100 West Randolph Street, 12th Floor
                                                Chicago, Illinois 60601-3218
                                                TELEPHONE: (312) 814-2235
                                                FAX: (312) 814-2253
                                                E-MAIL: emalamuth@atg.state.il.us

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date mailed a copy of this document via the United States Postal Service to the following non-CM/ECF user:

Hassan Butler
K80816
Western Illinois Correctional Center
2500 Rt 99 South
Mt. Sterling, Illinois 62353.

s/ Eldad Z. Malamuth
ELDAD Z. MALAMUTH, Bar # 6275421
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-2235
FAX: (312) 814-2253
E-MAIL: emalamuth@atg.state.il.us